# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MELISSA AXELROD and JULIE
SHIGEKUNI, *on behalf of themselves
and other employees similarly situated*,

    Plaintiffs,

v.                                          Civ. No. 18-427 KG/GBW

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me pursuant to the Court's Order of Reference (*doc. 20*), referring Defendant's Motion to Dismiss Plaintiffs' Complaint for Damages for Violation of Fair Pay Laws (*doc. 4*) and the attendant briefing (*docs. 5, 14, 15*) to me for analysis, proposed findings, and recommended disposition. For the following reasons, I RECOMMEND that the Court DENY the Motion to Dismiss as it pertains to Plaintiffs' claims arising under the Fair Pay for Women Act ("FPWA"). Further, I RECOMMEND that the Court DENY the Motion to Dismiss as it pertains to the EPA claims and instead permit Plaintiffs leave to amend their Complaint to better articulate why their Equal Pay Act ("EPA") claims are not barred by the statute of limitations due to the federal

discovery rule.[1]

## I. BACKGROUND

Defendant removed this action from the Second Judicial District Court, County of Bernalillo, State of New Mexico to this Court on May 4, 2018. *Doc. 1*. Plaintiffs filed their First Amended Complaint—the operative Complaint in this action—in state court below on April 17, 2018, alleging that Defendant violated the New Mexico Fair Pay for Women Act[2] ("FPWA"), the New Mexico Human Rights Act[3] ("NMHRA"), and the federal Equal Pay Act[4] ("EPA"). Plaintiffs are women who are current or past employees of the University of New Mexico ("UNM") and hold positions as professors, department chairs, and other upper-level academic positions. *Doc. 1-3* at 1. Plaintiffs' asserted factual basis for their claims is that they were paid less than male employees of UNM performing similar work, under similar conditions, utilizing similar skills, effort, and responsibility as Plaintiffs, and that these sex-based pay disparities violate both state and federal law, entitling Plaintiffs to compensatory and punitive damages. *Id.* at 3-7. Plaintiffs received letters from the Equal Employment Opportunity Commission ("EEOC") dated June 27, 2017, informing them of the EEOC's determination, following

---

[1] The Motion to Dismiss was also directed against Plaintiffs' claims under the New Mexico Human Rights Act, but the parties have stipulated to the dismissal of those claims without prejudice after briefing was completed on the present Motion. *See doc. 19*. Therefore, I do not address those claims herein.
[2] N.M.S.A. §§ 28-12-1 *et seq.*
[3] N.M.S.A. §§ 28-1-1 *et seq.*
[4] 29 U.S.C. § 206(d).

a "direct charge" investigation, that Defendant's pay practices with regard to each Plaintiff violated the EPA. *Id.* at 2, 4; *see also doc. 5* at 1; *doc. 5-2*; *doc. 14* at 8-9, 17-25. In these letters, the EEOC disclosed to each Plaintiff specific amounts of back wages and interest that she was due based on pay disparities between 2007 and 2014, according to the EEOC's investigation. *Doc. 14* at 23-25. Plaintiffs assert that Defendant Board of Regents of UNM is the governing body ultimately responsible for such discriminatory and unlawful pay disparities. *Id.* at 1.

Following removal, on May 25, 2018, Defendant filed a Motion to Dismiss and a Memorandum in Support (*docs. 4, 5*), which are now before me pursuant to the Court's Order of Reference. *Doc. 20*.

## II. PARTIES' POSITIONS

Defendant argues that Plaintiffs' FPWA claims are barred because Defendant is a state entity and the FPWA contains no waiver of state immunity. *See doc. 5* at 4-7. Plaintiffs argue that the FPWA does apply to state employers such as Defendant, because the FPWA is part of the same statutory scheme as the NMHRA, which explicitly allows employment discrimination claims to be brought against state employers. *Doc. 14* at 4-7. Both parties acknowledged that whether the FPWA applies to state employers was a question then pending before the New Mexico Court of Appeals in the consolidated cases of *Tafoya Lucero v. N.M. Corrs. Dep't*, Ct. App. 35,438, Dist. Ct. No. D-101-CV-2013-03206 (Briefing Complete as of 10-7-16), and *Wolinsky v.*

*N.M. Corrs. Dep't*, Ct. App. No. 35,762, Dist. Ct. No. D-101-CV-2016-01005 (Briefing Complete as of 3-29-17). In those cases, state district court judges reached opposing conclusions on the issue. *See doc. 5* at 4 n.1; *doc. 14* at 5; *see also Gonzales v. Cty. of Taos & Taos Cty. Bd. of Comm'rs*, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, *doc. 58* at 32-33 in 17-cv-0582 NF/KHR (D.N.M. Aug. 1, 2018).

Due to the fact that this matter of first impression under New Mexico law was, at the time of Plaintiffs' Response, pending before a state court, Plaintiffs presented several alternative options to the Court: (1) decide the state law question based on the parties' briefing; (2) certify the question to the New Mexico Supreme Court pursuant to N.M.R.A. 12-607(A)(1); or (3) reserve ruling on the question, pending the outcome of the *Wolinsky/Lucero* cases. *Doc. 14* at 5-6. Defendant urged this Court to decide the issue directly and presented its legal arguments that the FPWA claims do not apply to state employers and should thus be dismissed. *Doc. 5* at 4-7; *doc. 15* at 2-5.

Regarding the EPA claims, Defendant contends that Plaintiffs' EPA claims are untimely, because Plaintiffs failed to bring these claims within the applicable statute of limitations period. *Id.* at 13-15. In response, Plaintiffs argue that, because they were unaware of the disparate pay forming the basis of their claims until they received the June 2017 EEOC letters, these claims are timely filed based upon the federal "discovery rule," which delays the accrual of a claim until a plaintiff knew or should have known

4

the facts necessary to establish her cause of action. *Doc. 14* at 9-11; *see also Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (describing the federal discovery rule). Further, Plaintiffs argue that the "continuing violation" doctrine also applies and makes their claims timely. *Doc. 14* at 12-13. Under the continuing violation doctrine, "a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are 'part of a continuing policy or practice that includes the act or acts within the statutory period.'" *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) (quoting *Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1561 (10th Cir. 1994)). Accordingly, Plaintiffs request that the Court deny Defendant's motion to dismiss the EPA claims outright, or, in the alternative, that the Court grant Plaintiffs leave to amend their First Amended Complaint in order "to more artfully plead the elements of delayed discovery under the Discovery Rule and/or a continuing violation of the EPA, under the Ledbetter Fair Pay Act[.]" *Doc. 14* at 15. In its Reply, Defendant contends that neither the continuing violation doctrine nor the discovery doctrine is applicable to toll the statutory limitations period governing Plaintiffs' EPA claims, making leave to amend futile.

III. **ANALYSIS**

  A. **The Court should deny the motion to dismiss as it applies to Plaintiffs' FPWA claims.**

At the time of briefing, the question of whether FPWA claims can be brought

against state entities was a matter of first impression in New Mexico and remained pending before the New Mexico Court of Appeals. *See Gonzales*, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, *doc. 58* at 32-33 in 17-cv-0582 NF/KHR (D.N.M. Aug. 1, 2018) (discussing the pending New Mexico Court of Appeals consolidated cases and reserving ruling on the same issue in part because "the reach of the FPWA appears to be an issue of significant state importance, including issues of state sovereignty."). On August 30, 2018, the New Mexico Court of Appeals filed its opinion in the consolidated *Wolinsky/Lucero* cases.[5] *Wolinsky v. New Mexico Corrections Dep't*, No. A-1-CA-35762 (N.M. Ct. App. August 30, 2018). The *Wolinsky* court held that the state has no sovereign immunity from liability under the FPWA, and the legislature intended the state to be subject to FPWA claims. *Id*.

The existence of sovereign immunity under the FPWA (and thus the viability of Plaintiffs' FPWA claim) is a question to be resolved by reference to state law. "'A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state.' This rule also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (quoting *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) (internal citations omitted)).

---

[5] As Defendant correctly notes in its Notice of Supplemental Authority, the opinion in *Wolinsky* is "as yet unpublished." *Doc. 21*. However, the opinion is designated for future filing and will not remain unpublished.

In ruling directly on Defendant's motion to dismiss the FPWA claims, the Court must predict the decision of the state's highest court. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("If the state's highest court has not addressed the issue presented, the federal court must determine what decision that state court would make if faced with the same facts and issue."). The Court does so by considering "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Id*. Where the state's highest court has not issued a controlling decision, "a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court would decide otherwise." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 967 (10th Cir. 2018).[6] In the case before the Court, there has been a clear decision by the New Mexico Court of Appeals. While the defendant in *Wolinsky* has noticed an appeal to the New Mexico Supreme Court, Defendant in the instant case has presented no evidence or argument that the New Mexico Supreme Court would decide differently. Consequently, for the purposes of the motion to dismiss, it is proper for the Court to adopt the New Mexico Court of Appeals' interpretation of state law as articulated in *Wolinsky*.[7]

---

[6] Whether federal courts must defer to intermediate state court decisions in making these *Erie* predictions, or must merely consider them as one of many factors, is a question currently pending before the Supreme Court. *Black & Veatch*, 882 F.3d, *cert. granted, sub nom. Aspen Insurance (UK) Ltd., et al. vs. Black & Veatch Corporation*, No. 17-1662 (U.S. Jun 13, 2018). Until the Supreme Court renders its decision or the Tenth Circuit alters its position, this Court remains bound by the approach laid out in *Greystone*, 661 F.3d at 1282.

[7] This conclusion renders moot the alternative options proposed by Plaintiffs—a stay or a certification to

Turning to Defendant's dismissal argument, Defendant contends that Plaintiffs have failed to state a claim under the FPWA because FPWA claims against the state are barred by sovereign immunity. *Doc. 5* at 4. The Court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). In ruling on 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court should not grant a 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (internal citations omitted)).

Defendant's only argument for dismissal of Plaintiffs' FPWA claim is that the FPWA is not applicable to the state and contains no waiver of sovereign immunity. *See docs. 4*, *5*, *15*. Given the New Mexico Court of Appeals' decision that the state *is* subject to claims brought under the FPWA, *Wolinsky*, No. A-1-CA-35762, it is not clear beyond a doubt that Plaintiffs will not be able to prove their claim. At this juncture, I therefore recommend that Defendant's motion to dismiss Plaintiffs' FPWA claim be denied.

---

the New Mexico Supreme Court. *See doc. 14* at 6.

**B. The applicability of limitation doctrines on Plaintiffs' Equal Pay Act claims.**

Plaintiffs' claims relate to allegedly discriminatory pay they received between 2007 through 2014.[8] Under 29 U.S.C. § 255(a), however, a claim under the Equal Pay Act must be commenced within two years of its accrual, or three years if the violation is willful. Even assuming a finding of willfulness of which there is no allegation in the First Amended Complaint, such a lawsuit would ordinarily have to be brought by December 2017. Plaintiffs' claims were filed in state court in early 2018.[9] Therefore, barring a delay in accrual date or some doctrine of tolling, Plaintiffs' claims are untimely. In the briefing on the present Motion, Plaintiffs have presented two doctrines that they contend should apply to defeat Defendant's affirmative statutory limitations defense. Specifically, Plaintiffs argue that both the "continuing violation" doctrine and the "discovery rule" apply to their EPA claims and make them timely. While I do not agree that the "continuing violation" doctrine applies, I recommend that the Court permit Plaintiffs leave to amend to present facts to support a later accrual date based upon the "discovery rule."

---

[8] To be sure, Plaintiffs' First Amended Complaint does not explicitly refer to any particular time period. *See doc. 1*, Ex. A-2. It does, however, indicate that the discriminatory wages of which they complain are those identified in the letter of determination they received from the Equal Employment Opportunity Commission. *See id.*, ¶7, ¶10. That letter relates to wage discrimination covering 2007 through 2014. *See doc. 5*, Ex. B. Moreover, in their Response, Plaintiffs do not dispute that their First Amended Complaint is based upon discriminatory pay from 2007 through 2014. *See doc. 14* at 8-13.
[9] Plaintiffs' original Complaint was filed on February 27, 2018 and their First Amended Complaint was filed on April 17, 2018. *See doc. 1*, Exs. A-1, A-2. Neither party has briefed the issue of which should control for the purposes of the statute of limitation.

*1. The "Continuing Violation" Doctrine*

"[U]nder proper circumstances, a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are 'part of a continuing policy or practice that includes the act or acts within the statutory period.'" *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) (quoting *Mascheroni v. Board of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1561 (10th Cir.1994)). To establish such a "continuing violation," a plaintiff must establish "either that (1) a series of related acts was taken against him, with one or more of those acts occurring within the limitations period, or (2) the defendant maintained a company-wide policy of discrimination both before and during the limitations period." *Id.* at 1183-84 (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1227 (10th Cir. 2001)). Originally under Tenth Circuit precedent, the analysis of whether alleged discriminatory acts are sufficiently related to constitute a continuing violation or whether such acts are discrete acts which must be regarded as individual violations utilized a three-part inquiry: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Mascheroni*, 28 F.3d at 1561 (quotation omitted). However, as recognized by the *Davidson* court, the Supreme Court implicitly overturned this approach in *National R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101 (2002). *See Davidson*, 337 F.3d at 1184-86. After *Morgan*, "plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period." *Id.* at 1185.

Therefore, the key question is whether, in the context of discriminatory pay claims, each discriminatory paycheck is a discrete act of discrimination. One must again look to *Morgan* where the Supreme Court defined "discrete acts" in this context. "Discrete acts, such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Morgan*, 536 U.S. at 114. Moreover, an important quality of "discrete acts" are that they "constitute[] a separate actionable 'unlawful employment practice.'" *Id*. "Discrete acts" were distinguished from hostile work environment claims where the "very nature [of the claim] involves repeated conduct [and] therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id*. at 115. Judged against this rubric, discriminatory pay is a discrete act. *See O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006) ("Each discriminatory paycheck [plaintiff] received constitutes a separate violation of the EPA … [t]herefore … the continuing violation doctrine does not [apply.]"); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002) (Court has "noted the contrast between a continuing wrong, such as deliberate indifference to a prisoner's medical treatment, and

discrete acts, such as consistently underpaying an employee because of her sex."); *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (A "claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs rather than a single and indivisible course of wrongful action."); *Bazemore v. Friday*, 478 U.S. 385, 395-96 ("Each week's paycheck that delivers less to a [disadvantaged class member] than to a similarly situated [favored class member] is a wrong actionable under Title VII…."); *see also Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1010 (10th Cir. 2002) (although applying pre-*Morgan* law regarding application of continuing violation doctrine, the court agreed that a "claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs…."). While it typically occurs repeatedly in paycheck after paycheck, a plaintiff need not prove such repeated conduct to prevail. Instead, each discriminatory paycheck "constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114.

Therefore, even if the "continuing violation" doctrine applies to claims under the Equal Pay Act, it is unavailable to alter the applicable statute of limitations because each discriminatory paycheck is a discrete act of discrimination under *Morgan*. *See O'Donnell*, 466 F.3d at 1113; *Pollis*, 132 F.3d at 119; *Krough v. Cessford Construction Co.*, 231 F. Supp. 2d 914, 921 (S.D. Iowa 2002). Moreover, while neither side presented this

argument, it appears that the "continuing violation" doctrine does not apply to Equal Pay Act claims at all. As the Tenth Circuit has explained,

> This continuing violation theory is a creation of federal law that arose in Title VII cases. This theory recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series. Although this theory thus allows a plaintiff's claims to encompass acts that would otherwise be time-barred by the relatively short limit for filing administrative charges, a plaintiff can only receive back pay for the two years prior to the filing of administrative charges. … [W]e agree with the [Fourth Circuit] that because the continuing violation theory is a creature of the need to file administrative charges, and because a section 1981 claim does not require filing such charges before a judicial action may be brought, the continuing violation theory is simply not applicable.

*Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513-14 (10th Cir. 1997). Because, like section 1981 claims, Equal Pay Act claims do not require the filing of administrative charges, the continuing violation doctrine is inapplicable to Plaintiffs' claim under that act. In any event, it is clear that the untimeliness of Plaintiffs' Equal Pay Act claims cannot be salvaged by the "continuing violation" doctrine.

### 2. Delayed Accrual Based on the "Discovery Rule"

Federal law governing accrual of causes of action "conform[s] in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "And '[u]nder those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief.'" *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1215 (2014) (quoting *Wallace*,

549 U.S. at 388). The federal discovery rule "delays accrual of a claim until the plaintiff knew or should have known the facts necessary to establish her cause of action[.]" *Varnell*, 756 F.3d at 1216. This rule is generally read into statutes of limitation in federal question cases in the absence of a contrary directive from Congress. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The Supreme Court has declined to answer whether the discovery rule applies to employment discrimination claims such as those brought under Title VII or the EPA. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 n. 7 (2002). Nonetheless, the Tenth Circuit has generally assumed its application to that context. *See, e.g., Davidson*, 337 F.3d at 1186-87; *contra Hamilton v. 1st Source Bank*, 928 F.2d 86 (4th Cir. 1990) (en banc) (discovery rule does not apply to Age Discrimination in Employment Act claims).

Assuming that the discovery rule would delay accrual past the date of a person's mere receipt of the discriminatory paycheck, what is the knowledge which marks the accrual of a claim of discriminatory pay? Some courts have ruled that "[t]he important question for accrual purposes, then, is when did Plaintiffs know, or when should they have known through the exercise of reasonable diligence, that they were underpaid because they are women." *Schengrund v. Penn. State Univ.*, 705 F. Supp. 2d 425, 434 (M.D. Pa. 2009); *see also Funayama v. Nichia Am. Corp.*, No. CIV.A. 12-5406, 2014 WL 1013484, at *7 (E.D. Pa. Mar. 14, 2014), *aff'd*, 582 F. App'x 100 (3d Cir. 2014). However, this approach would seem contrary to the holding of *Hulsey v. Kmart, Inc.*, 43 F.3d 555,

14

558-59 (10th Cir. 1994), which established that "notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue . . .[o]n the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." In other words, an employment discrimination claim can accrue even if the employee does not know that illegal discrimination motivated the employer's decision. In discriminatory pay cases, perhaps the discovery rule, if applicable, would delay accrual only until the employee knew or should have known of a relevant pay disparity notwithstanding ignorance about its cause. *See, e.g.*, *Adams v. CBS Broadcasting, Inc.*, 61 Fed. App'x 285, 288 (7th Cir. 2003); *Clark v. Sears Roebuck & Co.*, 816 F. Supp. 1064, 1069 (E.D. Pa. 1993); *see also Goodwin*, 275 F.3d at 1008-11 (in context of "continuing violation" analysis, the court repeatedly noted plaintiff's lack of notice of any pay disparity).

The undersigned need not reach a conclusion on this question because, as it currently stands, the First Amended Complaint makes no factual assertions which could support any delayed accrual based upon the discovery rule. While the First Amended Complaint asserts that Plaintiffs received a letter from the EEOC on June 27, 2017, it makes no assertion that they were unaware of discriminatory pay prior to that date. An unclear assertion on that point appears in counsel's response, but such is not relevant to a Rule 12(b)(6) analysis focused only on the pleadings. *See doc. 14* at 9 ("Only upon receipt of notice, their becoming aware of the basis of an EPA claim, and

the applicable time limitations, did the clock start to run on these claims….").
Moreover, this "assertion" completely fails to address the issue about whether Plaintiffs should have known of the pay disparity which lasted seven years. In their Response, Plaintiffs request that, if the Court finds the Complaint insufficient to preserve the "discovery rule" argument, it "grant them leave to amend to plead the requisite facts alleging recent discovery …." *Doc. 14* at 10. However, Plaintiffs have not filed a motion to amend or provided a proposed Second Amended Complaint. Given the possible relevance of the discovery rule to the limitations issue before the Court, I hereby order Plaintiffs to file a Motion for Leave to Amend with a proposed Second Amended Complaint within ten days. The amended complaint should include all allegations relevant to the discovery rule as described above. Should Plaintiffs file such a motion, I recommend the Court grant the Motion for Leave to Amend and deny Defendant's Motion to Dismiss with respect to Plaintiff's EPA claims without prejudice. Defendant would then be free to file a renewed motion to dismiss focused on the "discovery rule" argument as applied to the putative Second Amended Complaint.

## IV.  CONCLUSION

For the foregoing reasons, I hereby recommend that the Court DENY Defendant's Motion to Dismiss as it pertains to claims arising under the FPWA. I further recommend that, should Plaintiffs file a Motion for Leave to Amend with a proposed Second Amended Complaint which presents their allegations related to

16

accrual pursuant to the "discovery rule," the Court grant such motion and DENY

Defendant's Motion to Dismiss with respect to Plaintiffs' EPA claims without prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**